# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES KENNETH SEELEY,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No.   323557
Genesee Circuit Court
LC No.   14-034659-FC

Before:  STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 8 to 25 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, 4 to 15 years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction.  Because the evidence was sufficient to support defendant's convictions and defendant is not entitled to resentencing, we affirm.

According to the evidence introduced at trial, at approximately 7:00 p.m. on September 29, 2013, the victim, Gavaughny Mims, and his friend, Tylor Simpson, both of whom were fourteen years old, were walking down Arizona Avenue in Flint, Michigan.  As they walked, they saw two individuals on the front porch of 1514 Arizona.  Mims and Simpson later identified defendant as one of the individuals on the porch, and the other individual was Victor Shaw, the 14-year-old son of defendant's girlfriend.  As Mims and Simpson continued to walk, defendant's girlfriend came out of the house onto the porch.  Defendant's girlfriend began to stare at the boys and, in response, Mims yelled at her, "what are you lookin' at, bitch?"

---

[1] Defendant was charged with two counts of assault with intent to commit murder, MCL 750.83. Defendant was found not guilty of these counts, but was convicted of one count of the lesser included offense of assault with intent to do great bodily harm less than murder.

Following Mims's remark, the boys continued to walk, at which time Mims saw defendant raise his arm out straight in front of him. Mims then saw a flash, heard a loud bang, and immediately felt his leg lock up. After he was shot, Mims attempted to run with Simpson away from the home. Simpson then called 911. At trial, neighbors confirmed that defendant lived at 1514 Arizona, and one neighbor in particular, Judith Howe, testified that she saw defendant on the porch at 1514 Arizona on the day in question after she heard gunfire.

Later that day, police arrested defendant at 1527 Arizona, down the street from where the shooting occurred. A search warrant was executed at 1514 Arizona. Inside of the home, officers recovered a shotgun, rifle, and a pistol. In addition, the officers discovered a box of .22 caliber bullets, the same caliber as the bullet found lodged near Mims's hip after he had been shot. The police later conducted tests of the firearms to see if they matched the bullet found in Mims, but the results of the tests were inconclusive.

At trial, Shaw testified for the defense. He claimed that defendant did not live at 1514 and that, on the day in question, defendant was not on the porch. Shaw heard gunfire, but he claimed that no one on the porch fired a gun at Mims or Simpson. A jury convicted defendant of assault with intent to do great bodily harm less than murder, felon in possession of a firearm, and felony-firearm. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

On appeal, defendant first argues that there was insufficient evidence to support his convictions. Specifically, defendant maintains that the prosecutor failed to establish defendant's identity as the shooter beyond a reasonable doubt and that the prosecutor failed to show that defendant intended to cause great bodily harm. Therefore, he argues, all three of his convictions should be vacated.

We review de novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). This Court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). All conflicts in the evidence must be resolved in favor of the prosecution, and we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The elements of assault with intent to do great bodily harm less than murder are as follows: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (citation omitted). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Finally, the elements of felon in possession of a firearm are (1) that the defendant possessed, used, transported, sold, purchase, carried, shipped, received, or distributed a firearm in this state, (2) that the defendant was convicted of a felony or a specified felony, and (3) that the defendant had not regained

eligibility to possess a firearm. See MCL 750.224f; *People v Perkins*, 473 Mich 626, 630-631; 703 NW2d 448 (2005).

In addition, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[P]ositive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Further, "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.*

Considering the trial court record, there was clearly sufficient evidence to establish defendant's identity as the perpetrator of the crimes at issue. Mims and Simpson identified defendant as one of the individuals on the porch. Mims testified that he observed defendant raise his arm, and that he then saw a flash, heard a loud bang and felt his leg lock up. Medical testimony confirmed that Mims had been shot with a .22 caliber bullet. When police later executed a search warrant at 1514 Arizona, they discovered a large quantity of .22 caliber bullets and weapons that were capable of firing them. Testimony from neighbors confirmed that defendant resided at the house, and that he was on the porch on the day in question, close in time to when the shooting occurred. This evidence, combined with Mims's identification testimony, was sufficient to prove beyond a reasonable doubt that Mims was assaulted and that defendant was the individual who assaulted Mims. This same evidence also establishes, for purposes of felony-firearm and felon in possession of a firearm, defendant's identity as the individual who possessed, and in fact used, a firearm.[2] Overall, contrary to defendant's argument, the prosecutor presented sufficient evidence to allow a reasonable trier of fact to determine defendant's identity as the perpetrator of the crimes at issue.

With regard to defendant's intent, assault with intent to do great bodily harm less than murder is a specific intent crime that requires "an intent to do serious injury of an aggravated nature." *Brown*, 267 Mich App at 147 (citation omitted). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Gonzalez*, 256 Mich App 212, 226; 663 NW2d 499 (2003) (citations and quotations omitted). In particular, defendant's intent to do great bodily harm may be inferred from all the facts in evidence, including the type of weapon used. *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014). Moreover, although actual injury to the victim is not an element of the offense, "injuries suffered by the victim may also be indicative of a defendant's intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

It follows from these principles that, in this case, there was sufficient evidence to prove that defendant intended to do great bodily harm to Mims. As stated above, the evidence introduced at trial established that defendant was the individual who shot Mims. The very act of

---

[2] With regard to the elements felon-in-possession, defendant does not dispute that he had previously been convicted of a felony and was ineligible to possess a firearm at the time the present offenses were committed. And, for purposes of felony-firearm, it is clear from the evidence that defendant possessed the firearm during the commission of a felony.

aiming and firing a gun at an individual is strong circumstantial evidence of defendant's intent to cause great bodily harm. Cf. *Brown*, 267 Mich App at 152. Moreover, defendant in fact succeeded in shooting Mims and causing him injury. Given evidence that defendant used a potentially lethal weapon to actually shoot Mims, the jury could reasonably infer that defendant intended to do serious injury of an aggravated nature. See *Stevens*, 306 Mich App at 629.

In sum, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to establish beyond a reasonable doubt defendant's identity as the perpetrator of the crimes and to establish that defendant possessed the requisite intent for assault with intent to do great bodily harm. Defendant's claims of insufficient evidence are without merit and we therefore affirm defendant's convictions.

Defendant next argues that OVs 4, 9, and 19 were incorrectly scored by the trial court, and that, because the scoring altered the sentencing guidelines range, defendant is entitled to resentencing. Specifically, defendant contends that OV 4 should have been scored at zero points because Mims did not suffer serious psychological injury requiring professional treatment, that OV 9 should have been scored at zero points because Simpson was not in danger, and that OV 19 should have been scored at zero points because defendant's refusal to come to the door of 1527 Arizona when called by police did not constitute interference with the administration of justice.

At sentencing, defendant objected to the scoring OV 9 and OV 19, thus preserving those issues for appeal. See *People v Gibbs*, 299 Mich App 473, 491; 830 NW2d 821 (2013). However, defendant did not raise an objection in regard to the scoring of OV 4. Therefore, that issue is unpreserved and reviewed for plain error. *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Steanhouse*, __ Mich App __, __; __ NW2d __ (2015), slip op at 19. However, whether the facts as found by the court are sufficient to justify the scoring conditions prescribed by statute is a legal question to be reviewed de novo. *Hardy*, 494 Mich at 438. To the extent defendant's arguments are unpreserved, this Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCL 777.34 directs the trial court to assess 10 points under OV 4 where "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The statute specifies that 10 points should be scored "if the serious psychological injury *may* require professional treatment." MCL 777.34(2)(emphasis added). Under the statute, "the fact that treatment has not been sought is not conclusive," MCL 777.34(2); but it may be considered when scoring OV 4. See, e.g., *People v Bosca*, 310 Mich App 1, __; __ NW2d __ (2015), slip op at 24. Moreover, in considering what constitutes serious psychological injury, this Court has recognized that 10 points may be scored under OV 4 "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

In this case, according to the presentence investigation report (PSIR), Mims's mother reported that, after the shooting Mims "was scared to go anywhere." The PSIR also indicates that Mims personally stated that he would "be starting counseling," and that OV 4 was scored 10 points because the victim "will be talking to his therapist about the within offense." On this record, the trial court did not clearly err by scoring OV 4 at 10 points, and defendant has not shown plain error.

MCL 777.39 states that the trial court must score OV 9 at 10 points where "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). Defendant argues that because he was acquitted of the murder and assault charges in regard to Simpson, and because only one shot was fired, only Mims was placed in danger of physical injury or death. While defendant is correct that only Mims was actually struck by a bullet, OV 9 is to be assessed at 10 points if at least two victims were "placed in danger." MCL 777.39(1)(c). See also *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). Given that Mims and Simpson were walking together, the act of firing the weapon at Mims still placed Simpson in a great deal of danger. Indeed, Simpson testified that he "felt the breeze" from the bullet. Therefore, a preponderance of the evidence supported the trial court's scoring of OV 9 at 10 points.

Finally, MCL 777.49 instructs trial courts to score OV 19 at 10 points where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice, but is not limited to such acts." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). Moreover, a defendant may be scored points under OV 19 where his conduct interferes with the duties of law enforcement officers. See, e.g., *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004).

In this case, the trial court scored 10 points because, after the shooting, defendant went to a house down the street at 1527 Arizona and, when police arrived at that location, he and others present refused police requests to answer the door and come outside. Relying on *Illinois v Wardlow*, 528 US 119, 124-125; 120 S Ct 673, 676; 145 L Ed 2d 570 (2000), defendant maintains on appeal that this scoring was incorrect because an individual "has a right to ignore the police and go about his business." Defendant emphasizes that he did not actively flee from the police and he asserts that, under these circumstances, his refusal to come outside did not constitute interference with the administration of justice.

On the facts of this case, the prosecutor concedes error in the scoring of OV 19, and we agree. Nonetheless, accepting that the trial court erred by scoring this variable, defendant is nonetheless not entitled to resentencing. With the scoring of OV 19 at 10 points, defendant was assessed a total of 71 OV points, placing him at level V for the Class D offense of assault with intent to do great bodily harm less than murder. See MCL 777.16d; MCL 777.65. However, even if the trial court had scored OV 19 at zero, defendant's 61 total OV points would still place him in OV level V. MCL 777.65. Because the scoring of OV 19 did not alter the appropriate guidelines range, resentencing is not required. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto