# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONNIE ODELL TAYLOR,

Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No. 320693
Kent Circuit Court
LC No. 13-003900-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, Ronnie Odell Taylor, appeals as of right his convictions, following a bench trial, of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon in possession), MCL 750.224f. The trial court sentenced defendant to serve 25 to 50 years' imprisonment for armed robbery and conspiracy, 4 to 20 years' imprisonment for felon in possession, and a consecutive term of 5 years' imprisonment for felony firearm. We affirm.

## I. FACTS

A KFC restaurant was robbed on April 6, 2013. According to Christine Candia, from about 9:30 to 9:45 p.m. that night, while she was closing up a Biggby Coffee across the street from the KFC, a black Dodge Durango was in the parking lot outside. After Candia left the store and approached her car, which was parked next to the Durango, she saw a man in the vehicle turn and jump like he was frightened and then pull his hood over his face. When Candia received an alert on her phone about the robbery, she called the police about the Durango.

Stacey Chadbourne testified that she and Leonardo Simmons were with Taylor on the night of the robbery. According to Chadbourne, Taylor drove them to a Biggby Coffee's parking lot and they parked for a few minutes. Taylor then drove them to a BP gas station and asked Chadbourne to drive. Chadbourne drove back in the direction of the Biggby Coffee, and Taylor asked Chadbourne to let him off at a corner so that he could "catch a play," which meant to "go get some money," "make money," or "get something from somebody." Taylor called about 10 or 15 minutes later for Chadbourne to pick him up.

According to Anthony Sullivan, a KFC employee, the KFC's drive-through window closed at 10:00 p.m. and he left work at that time. Sullivan testified that another employee was supposed to lock the door behind him, but the door was never locked. Kathryn Kasper and Valery Reusser testified that they were working in an office in the back of the KFC after it closed. According to Kasper, she heard the doorbell chime. She looked around a corner and saw that a black man wearing a ski mask was pointing a gun at her. The man said that he would shoot her in the leg if she did not give him the money from the safe. Kasper gave the man the money from the safe and the register drawers, the man left, and she called the police.

Kasper testified that the man was wearing turquoise running pants. Kasper also testified that the man seemed familiar, but she could not identify him at the time of the robbery. Reusser testified that the man was wearing a black hoodie and black jeans. According to Reusser, she recognized that the robber was Taylor from his eyes and his voice. Reusser was familiar with Taylor because Taylor's wife had previously worked at the KFC. She had seen Taylor 15 or 20 times, including two or three times that the Taylors gave Reusser a ride home from work in their Durango. Reusser testified that the door from the dining area to the employee work space was unique and only people familiar with the restaurant would be able to open it without difficulty. Deputy Robert Porter testified that when he questioned Reusser, she indicated that the robber reminded her of Taylor because of his eyes and voice.

According to Deputy Andy Hinds, he began checking the area to look for possible suspects. Deputy Hinds spoke with Joey Visser-Hatch, a gas station clerk at a BP gas station about a quarter of a mile away from the KFC. Visser-Hatch told him that a black man matching Taylor's height had come into the BP earlier in the evening. After reviewing a surveillance video and comparing it to a photograph of Taylor, Deputy Hinds determined that the person who entered the BP was Taylor. According to Visser-Hatch, Taylor purchased gasoline and cigarettes at about 9:55 p.m., and Taylor's pants were about the same blue color as the Newport cigarettes that he purchased.

After his arrest, Taylor gave several inconsistent stories to police. According to Taylor, who testified at trial, he gave inconsistent stories because he was selling marijuana. When Chadbourne was driving the Durango, he saw the truck of a man named Brian, who he intended to sell marijuana to, parked at a gas station. He asked Chadbourne to let him out and come pick him up when he called. After Taylor sold the marijuana to Brian, he called Simmons and waited for Chadbourne to pick him up. Taylor testified that he, Chadbourne, and Simmons never stopped at a Biggby Coffee.

Taylor was convicted of armed robbery, conspiracy to commit armed robbery, felony-firearm, and felon in possession. He now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Taylor, through appellate counsel and in his pro-se brief filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4, contends that there was insufficient evidence of his identity as the robbery to sustain his conviction. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the crime's elements were proven beyond a reasonable doubt. *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness may provide sufficient evidence of identity. *People v Davis*, 241 Mich App 697, 699; 617 NW2d 381 (2000). This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). We must resolve any conflicts in the evidence in the prosecution's favor. *Id*. This includes conflicting identification testimony. *Davis*, 241 Mich App at 699.

In his Standard 4 brief, Taylor contends that the prosecution must prove his case to an "impelling certainty" because the case involved circumstantial evidence. "This is a misstatement of the law." *Ericksen*, 288 Mich App at 196. Circumstantial evidence and reasonable inferences arising from that evidence can sufficiently prove the elements of a crime. *Kanaan*, 278 Mich App at 622. The burden of proof in criminal cases is always the "beyond a reasonable doubt" standard, even when the evidence is circumstantial. *Ericksen*, 288 Mich App at 196.

In this case, Candia testified that on the night of the robbery, a man in a black Durango was behaving suspiciously in the Biggby Coffee parking lot that faced the KFC. Chadbourne testified that Taylor drove them to the Biggby Coffee, parked there for a few minutes, then drove them to a BP gas station. Chadbourne testified that she then drove back toward the Biggby Coffee and dropped Taylor off at a street corner. According to Reusser, who had seen Taylor 15 or 20 times, she recognized Taylor was the robber from his eyes and voice. Kasper testified that she did not immediately recognize the robber, but he was wearing turquoise running pants. Visser-Hatch, the gas station clerk, testified that Taylor was wearing pants about the same blue color as the Newport cigarettes he purchased.

We must view this evidence in the light most favorable to the prosecution and resolve any conflicting evidence in the prosecutor's favor. We conclude that sufficient identification and circumstantial evidence supported the trial court's finding that Taylor was the robber. On the basis of the identification and circumstantial evidence, a rational trier of fact could find that Taylor was the robber beyond a reasonable doubt.

## III. INEFFECTIVE ASSISTANCE

In his Standard 4 brief, Taylor contends that both trial and appellate counsel rendered ineffective assistance because they did not challenge the basis of the trial court's jurisdiction. As

far as we are able to determine,[1] Taylor contends that trial and appellate counsel were ineffective when they failed to contend that (1) the trial court did not have subject matter jurisdiction, (2) the laws under which Taylor was charged are void because they do not have an enacting clause, and (3) the trial court never acquired jurisdiction over Taylor because it did not serve him with notice of the charges against him.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Generally, when reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But when the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Id*.

We reject Taylor's claims that trial counsel was ineffective. Counsel need not make meritless challenges. *Ericksen*, 288 Mich App at 201. None of the challenges Taylor alleges that counsel should have made have any merit.

First, the trial court had subject matter jurisdiction over Taylor's case because his charges were felonies. "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Second, each of Taylor's offenses are under the Michigan Penal Code, which contains an enacting clause that satisfies the requirements of Const 1963, art 4, § 23. See MCL 750.1 *et seq*; 1931 PA 328. And third, Taylor was served with a felony advice of rights form on April 9, 2013, which Taylor signed before his preliminary examination on April 22, 2013. The trial court acquires personal jurisdiction over a defendant when the magistrate binds the defendant over after holding a preliminary examination or after the defendant waives a preliminary examination. *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998). Taylor had notice of the charges, and the trial court had personal jurisdiction over Taylor because it bound him over after holding a preliminary examination. Because trial counsel was not required to make these meritless challenges, we conclude that counsel was not ineffective.

---

[1] The handwritten portions of Taylor's brief are admirably logical and concise, but the typed portion is nearly incoherent, containing extensive jargon and little coherent argument. However, we have attempted to determine the basis of Taylor's argument and address his issues.

Further, Taylor has not established that appellate counsel rendered ineffective assistance. A defendant has the right to the effective assistance of appellate counsel, but a defendant's challenge to the effectiveness of appellate counsel fails when he or she is unable to show any possible prejudice. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). A defendant cannot establish that he or she was ineffectively assisted by appellate counsel when counsel failed to raise an issue that the defendant subsequently presented to this Court. *Id*. at 430-431. Because Taylor was able to raise these issues before this Court in his Standard 4 brief, he cannot establish that any effectiveness on the part of appellate counsel prejudiced him. Further, appellate counsel's decision to select those issues most promising for review is a strategic decision, *People v Reed*, 198 Mich App 639, 646-647; 499 NW2d 441 (1993), and we conclude that counsel's strategic decision not to raise these meritless issues was reasonable.

## IV. IDENTIFICATION

In his Standard 4 brief, Taylor contends that the trial court erred by admitting Kasper and Reusser's identifications because they were made under impermissibly suggestive circumstances. We disagree.

Generally, this Court reviews for clear error a trial court's decision to admit identification evidence. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.). However, a defendant must raise his or her challenge before the trial court to preserve it. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Taylor did not raise this issue before the trial court, and it is unpreserved. Therefore, we will review this issue for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it was clear or obvious, and it affected the defendant's substantial rights if it prejudiced the defendant. *Id*.

The United States and Michigan Constitutions provide that the state cannot deny a person "life, liberty, or property without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. An identification procedure can deny a defendant due process of law if it is impermissibly suggestive. *Kurylczyk*, 443 Mich at 302; *Neil v Biggers*, 409 US 188, 196-197; 93 S Ct 375; 34 L Ed 2d 401 (1972). "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. When considering the totality of the circumstances, courts should consider (1) the witness's opportunity to view the defendant during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's level of certainty at the identification, and (5) the length of time between the crime and the identification. *Id*. at 306.

In this case, Reusser identified Taylor while he was in prison clothing at the preliminary examination.[2] Accordingly, there is no question that the identification procedure was suggestive. *People v Colon*, 233 Mich App 295, 305; 591 NW2d 692 (1998). But "[s]imply because an

---

[2] We note that despite Taylor's contention, Kasper did not identify him at the preliminary examination.

identification procedure is suggestive does not mean it is necessarily constitutionally defective." *Id*. at 304.

Reusser was able to view Taylor during the crime and paid close attention to him. Reusser noted such details as Taylor's eyes, nose, and the sound of his voice. Reusser was less than five feet away from Taylor, was able to observe him from a close distance, and could hear his voice "clearly." Reusser's identification did not conflict with a prior description. Reusser was very certain about her identification:

> *Q*. And, tell me, did you recognize that voice?
>
> *A*. Oh yeah.
>
> *Q*. And did you recognize the facial features you could see?
>
> *A*. Definitely.
>
> *Q*. And who did you recognize that as belonging to?
>
> *A*. I recognize it as being him (indicating).
>
> * * *
>
> *Q*. Any question in your mind that it's him?
>
> *A*. No.

Finally, only a short period of time passed between the robbery and Reusser's identification—the robbery occurred on April 6, 2013, and the preliminary examination was on April 22, 2013.

After considering the totality of the circumstances, we conclude that the trial court did not commit plain error by permitting Reusser to identify Taylor at the preliminary examination. In this case, Reusser's identification of Taylor at the preliminary hearing did not lead to a substantial likelihood of misidentification.

We affirm.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray

-6-