# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH JAMAL THOMAS,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2016

No.  326226
Kalamazoo Circuit Court
LC No.  2014-001093-FH

Before:  BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant, Joseph Thomas, was convicted by a jury of possession of a short-barreled shotgun or rifle, MCL 750.224b; discharge of a firearm at a dwelling or potentially occupied structure, MCL 750.234b; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1).  The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 48 months to 10 years' imprisonment for his possession of a short-barreled shotgun or rifle conviction, 48 months to 15 years' imprisonment for his discharge of a firearm at a dwelling or potentially occupied structure conviction, and two years' imprisonment for his felony-firearm conviction.  We affirm.

Defendant's sole argument on appeal is that the evidence of his identity was insufficient to prove that he was the person who committed these crimes.[1]  A challenge to the sufficiency of

---

[1] Defendant does not challenge the sufficiency of the evidence supporting any of the other elements of the crimes of which he was convicted.  Additionally, to the extent that defendant's assertion that the victim "only provided an identification due to being brought to Defendant without any safeguards against misidentification" could be construed as a challenge to the identification procedure, we find this issue to be abandoned.  This issue was not raised in defendant's statement of questions presented and therefore is not properly presented for appeal and need not be addressed.  MCR 7.212(C)(5); *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008).  Moreover, defendant does not cite any legal authority in support of an argument regarding an improper identification.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*,

the evidence supporting a criminal conviction is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). This Court considers the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). The elements of a crime may be sufficiently proven by circumstantial evidence and reasonable inferences drawn from that evidence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Additionally, "positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*.

Here, there was sufficient evidence of defendant's identity as the person who committed these crimes. The victim, Andrew Luman, testified at trial that on July 28, 2014, at around 1:30 a.m., he was outside his home trying to jump start his car when two individuals walking nearby captured his attention by their behavior. He initially heard "screaming, derogatory slurs," and later noticed the two men walking in his direction. He saw that one of them was carrying a shotgun, and they were moving from tree to tree as if they were attempting to avoid being seen. The man holding the shotgun was alternating between moving fast and slow, "like he was stalking prey." The man with the shotgun was hiding behind a tree on Jackson Street, across from Luman's house. Luman testified that he was terrified, and he and his friend went inside his house. As they were walking inside the house, Luman observed the two men walk east on Jackson street toward Clarence Street. Soon after, Luman heard a loud bang that "sound[ed] to be [sic] like a grenade go[ing] off" and he "knew it was a gunshot." Evidence was presented at trial that the side of Luman's house was hit by a shotgun shot. Luman called the police. He testified that he indicated to the police that he could identify the man with the gun if he saw him again. Luman described the man with the gun as a tall, African-American male, wearing a white t-shirt, with his hair in braids. Although Luman admitted that he could not see the man's face, he testified that the lighting was sufficient for him to see the physical features that he described.

Luman positively identified defendant at a show up conducted soon after the shooting occurred. He identified defendant by his physique, braids, and white t-shirt. He also identified defendant in court during trial.[2] In addition, he identified another individual at the show up as

_____

231 Mich App 627, 640-641; 588 NW2d 480 (1998). An issue is abandoned if an appellant fails to properly address the merits of his claim of error. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

[2] At trial, the court asked Luman why he was so confident that the man he had identified was the one who had the gun (it appears that the court was asking a question submitted by the jury).

the man who accompanied the man with the gun. Luman identified the second man by the large square emblem on his shirt. Sergeant Ronald Boling of the Kalamazoo Public Safety Department testified that defendant had a "skinnier build" than the man with the large emblem on his shirt and that Luman "became very excited" when he identified one person as the man with the gun and another as someone who "was just with him."

Circumstantial evidence also linked defendant to the shooting. Officer Joseph Paul testified that shortly after the shooting was reported, he saw a maroon Pontiac G6 sedan drive east on Jackson Street, turn onto Clarence Street, and pull into the driveway of 931 Clarence Street, where it remained for less than three minutes before leaving again.[3] Evidence was admitted at trial that defendant lived at 931 Clarence Street. Kalamazoo Public Safety Officer Rebecca VanBrocklin testified that within two hours of the shooting she conducted a search at 931 Clarence Street, and while looking outside the home, she noticed a blanket behind the garage of 935 Clarence Street, which shares a driveway with 931 Clarence Street. Underneath the blanket was a shotgun; it did not belong to the homeowners. VanBrocklin testified that the blanket in which the shotgun was wrapped appeared to be dry even though it was raining that night, which indicated that the gun had been placed there recently. The shotgun was a 20 gauge shotgun, and a 20 gauge shotgun shell was found near Luman's house. There was also testimony that a maroon Pontiac G6 was stopped by police about four or five blocks away from Luman's house soon after the shooting and defendant was one of the three occupants of that car. While that car was pulled over for a traffic violation, Luman arrived and positively identified defendant.

Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could find that defendant was the shooter. See *Wolfe*, 440 Mich at 515. Luman's positive identification is sufficient proof of defendant's identity. See *Davis*, 241 Mich App at 700. Moreover, a reasonable jury could conclude that defendant went to 931 Clarence Street after the shooting, hid the gun behind the next-door neighbor's garage, left in the maroon Pontiac G6 with the other two individuals, and was apprehended by police when the car was pulled over. See *Wolfe*, 440 Mich at 515; *Nowack*, 462 Mich at 400.

Defendant contends that Luman's testimony should not have been relied upon because he admitted he had been drinking that night, he never actually saw anyone fire a shotgun, he did not see the face of the person with the shotgun, and he thought the shotgun used in the shooting was longer than the one introduced into evidence at trial. Yet, despite these flaws, the jury, who was in the best position to weigh the credibility and accuracy of the witnesses, apparently believed him and found his identification of defendant to be credible in light of his testimony and the other evidence admitted at trial. We will not interfere with that credibility assessment. *Davis*, 241 Mich App at 700. "It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact," and juries are better situated to make determinations of witness credibility. *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974).

Lumen responded, "I'm one hun—I mean, I have no reason for that. I saw what I saw. His stat—his demeanor, his statute [sic] –his physique, the braids and the white t-shirt."

[3] Paul testified that the vehicle pulled far enough into the driveway that he was unable to see whether anyone got into or out of the vehicle from his vantage point.

In sum, viewing the evidence in a light most favorable to the prosecution, Luman's positive identification and the circumstantial evidence connecting defendant to the shooting provided sufficient evidence to support the jury's conclusion that defendant was the person who committed the crimes for which he was convicted. *Davis*, 241 Mich App at 700; *Nowack*, 462 Mich at 400; *Wolfe*, 440 Mich at 515.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering