# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DEMETRIUS ALEXANDER MITCHELL,

      Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 335112
Saginaw Circuit Court
LC No. 15-041609-FC

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); carrying a dangerous weapon with unlawful intent, MCL 750.226; and three counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The jury found defendant not guilty of unlawful imprisonment, MCL 750.349b, and a felony-firearm charge related to unlawful imprisonment. The trial court sentenced defendant to serve concurrent terms of imprisonment of 9 to 20 years for the armed robbery and first-degree home invasion convictions and three to five years for the carrying a dangerous weapon with unlawful intent conviction, and to terms of imprisonment of two years for each count of felony-firearm to be served consecutively to his other sentences. On appeal, defendant challenges the trial court's decision to admit the in-court identification of an eyewitness and the scoring of the sentencing variables. We affirm.

In July 2015, Shyanne Edwards lived at the home of her mother, Tammy Meyer, with her fiancée, Serina Witherell, and Witherell's two young children. On July 23, 2015, around 11:30 p.m., Edwards, Witherell, and the children went to sleep in Edwards's bedroom. Meyer was away from the home at the time. An air conditioning unit was running in the window of the bedroom, and Edwards had hung a blanket over the doorway to trap the cold air inside the room. At some point, Edwards was awakened by the sound of her dog barking; she then noticed lights flickering on and off in the space beneath the blanket, and a man she did not know poked his head around the blanket.

Edwards immediately called 911, and, while she was on the phone, a second man entered the room wearing a gray hooded sweatshirt and carrying a gun. Edwards hid the phone beneath the blanket on her bed, and when the man asked her if she had called the police she told him that she had not. The man, whom Edwards later identified as defendant, also asked her if she had any

-1-

jewelry or other valuables in the room; he left when she told him that she did not. Edwards testified that the police arrived not long after the men left her room and arrested two men who were in the house, Robert Thomas and Edward Williams. The police arrested a third man that evening, Evee Cooper, while Cooper was hiding in a parked vehicle in the neighborhood of Meyer's house. A fourth individual was seen running from Meyer's home on foot. The police pursued this fourth individual but were not able to apprehend him. During the course of their interviews with Thomas and Williams, however, police uncovered evidence that defendant was the fourth individual. Additionally, the vehicle in which Cooper was found was registered to defendant's grandmother, and police officers also located defendant's driver's license inside of a wallet found in the vehicle.

## I. EDWARDS'S IDENTIFICATION OF DEFENDANT

At the preliminary examination, Edwards identified defendant as the gunman who had entered her room during the home invasion. Edwards testified that she had seen a photograph of defendant in an online news article about the incident, but stated that she recognized him based on his appearance in her room that night and had not relied on the article to identify him. Defendant filed a motion to suppress Edwards's in-court identification, which the trial court denied. On appeal, defendant argues that Edwards lacked an independent basis to make the in-court identification and that the trial court erred by denying his motion. Additionally, defendant argues that the court erred by failing to weigh the factors set forth in *People v Gray*, 457 Mich 107; 577 NW2d 92 (1998), when determining whether Edwards's identification of defendant was reliable or tainted by illegal identification procedures. We find *Gray* inapplicable to this case and agree with the trial court's decision to deny defendant's motion.

In *Gray*, 457 Mich at 111, the Supreme Court held that "[a] photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." The defendant in *Gray* argued that an officer "impermissibly suggested to the victim that defendant was her assailant when he showed her a single photograph of defendant and told her that he was the man they had arrested in connection with her assault." *Id.* at 110. The Supreme Court concluded that "[t]he display of the single photograph, combined with the statement that this was the man the police had arrested for the assault, was highly suggestive." *Id.* Yet the inquiry did "not end once we have found an invalid identification procedure. The second step in our analysis is to determine whether the victim had an independent basis to identify the defendant in court." *Id.* at 114-115. The Supreme Court then identified several factors for trial court's to consider on the second step. *Id.* at 115-116.

In this case, the trial court noted that no state actor was involved in the pretrial publicity, nor did any state actor expose the online news article and accompanying photograph of defendant to Edwards. Rather, Edwards independently viewed the article. Therefore, because there was no state action, there was no evidence to support a finding that there was an invalid identification procedure. Without satisfying the first part of the inquiry under *Gray*, the court was not required to reach the second part of the analysis. Thus, we conclude that the trial court did not err by failing to consider the independent-basis factors.

Moreover, even if we were to find that Edwards's viewing of the photo was somehow improperly suggestive, defendant has not shown that his right to a fair trial was violated on this basis. As the trial court noted, defendant was not prevented from arguing that Edwards's identification was invalid; he raised this issue during his cross-examination of Edwards so that the jury was aware that it had occurred. In addition, defendant challenged the identification on other grounds by pointing out that it was dark in Edwards's bedroom when the gunman entered and that the gunman was wearing a bandana over his face, obscuring his features. Edwards did acknowledge at trial that she could not be totally certain that defendant was the gunman who had entered her room, but it does not follow that Edwards's identification should have been suppressed. Rather, "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Whether Edwards's identification was unreliable was a question of fact that the jury was able to determine.

Additionally, Edwards's in-court identification was merely cumulative to other evidence that linked defendant to the offense: an officer, as well as Thomas and Cooper, testified that they saw defendant at the crime scene; defendant had possession of his grandmother's vehicle, which was located near the scene; defendant fit the description of the suspect who fled from police; and defendant's driver's license was found in the vehicle. Because substantial evidence linked defendant to the crime, even if we were to find error with respect to the in-court identification, that error would be harmless. MCL 769.26. Defendant is not entitled to a new trial based on the in-court identification.

## II. OFFENSE-VARIABLE SCORING

Defendant also challenges the trial court's scoring of Offense Variables (OVs) 1 and 2. On appeal, defendant's objections to the trial court's scoring is unclear, but defendant does note that his trial counsel challenged the trial court's scores for OVs 1 and 2 at sentencing, and argues that based on his acquittal of unlawful imprisonment he is entitled to resentencing. Therefore, we will treat defendant's argument as a challenge to the trial court's scoring of OVs 1 and 2.

Defendant was scored 15 points for OV 1, aggravated use of a weapon, MCL 777.31, and five points for OV 2, lethal potential of weapon used, MCL 777.32. OV 1 is properly scored at 15 points where "[a] firearm was pointed at or toward a victim." MCL 777.31(c). OV 2 is properly scored at five points where the defendant "possessed or used a pistol, rifle, shotgun, or knife." MCL 777.32(d).

Defendant was charged with unlawful imprisonment based on Edwards's testimony that one of the intruders had stood in the doorway of her bedroom watching guard with a gun pointed at her face. Defendant argues that OV 1 should not have been scored at 15 points because defendant was acquitted of unlawful imprisonment. Defendant's argument, however, is not persuasive because there is no requirement in the statute that a defendant must be convicted of unlawful imprisonment in order for the court to score 15 points for this variable. Because the evidence was sufficient to demonstrate that defendant appeared in Edwards's room and pointed a gun at her, the trial court's score of 15 points for OV 1 was appropriate.

Similarly, defendant's argument that OV 2 should have been scored at zero points based on his acquittal of unlawful imprisonment is not persuasive. There is no requirement in the statute that a defendant be convicted of unlawful imprisonment in order to assess five points for OV 2. Additionally, we note that the jury found defendant guilty of several weapons charges, including three counts of felony firearm and carrying a dangerous weapon with unlawful intent. Defendant's convictions were sufficient to support the trial court's finding that defendant possessed a firearm during the offense; thus, the trial court properly scored OV 2 at five points.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle