# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 8, 2019

Plaintiff-Appellee,

v

No. 339550
Macomb Circuit Court
LC No. 2016-000927-FH

EDWARDIAN DION DAVIDSON,

Defendant-Appellant.

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant, Edwardian Dion Davidson, appeals as of right his jury trial convictions of three counts of unarmed robbery, MCL 750.530, one count of assault and battery, MCL 750.81, and one count of attempted first-degree home invasion, MCL 750.110a(2)(a). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for the three unarmed robbery convictions, 93 days in jail for the assault and battery conviction, and 15 to 30 years' imprisonment for the attempted first-degree home invasion conviction. We affirm.

This case arises out of a series of robberies that took place between October 26, 2015, and October 29, 2015, in Warren. Defendant stole a purse from the first victim just after she and her husband had arrived home from dinner one evening. The victim entered her house, closed the front storm door, and was attempting to lock it when defendant ran up to the house, grabbed the door handle, and the two engaged in a "tug-of-war" with the door. Defendant eventually succeeded in "yanking" the victim onto her porch, where he was able to pull her purse off her shoulder after a brief struggle and run away. The second victim was an elderly woman who whose daughter had just driven her home after having dinner together. After the victim and her daughter pulled into the driveway and parked, defendant ran up to the car, opened the passenger side door, and punched the victim twice in the face. She tried fending him off by kicking at him. Witnessing this from the driver's seat, the victim's daughter got out of the car and ran around to the passenger side to protect her mother. Defendant and the daughter met "face to face" outside the car, and then defendant punched the daughter in the mouth. She punched him back, but defendant had the victim's purse and ran away. The third victim encountered defendant in her garage after she had returned home from picking up carry-out food for dinner. As she was grabbing a can of soda from a box in the garage, she heard a noise and walked back toward her car, where she saw defendant standing with his hand raised as if he was about to strike her. She

-1-

swore at him and he ran away, after which point she discovered that her purse was missing from her car.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to prove beyond a reasonable doubt that he committed any of the crimes for which the jury convicted him. We disagree. This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We view the evidence "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. We resolve all conflicts in the evidence in favor of the prosecution, and "circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). This Court will not interfere with the jury's determinations regarding "the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Defendant argues that the prosecution's evidence was not sufficient to identify him as the perpetrator of the charged crimes. He contends that the eyewitness testimony given by the victims was unreliable because none of the women positively identified him in a photographic lineup or at trial. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

The first victim testified at trial that she was unable to positively identify anyone in the first photographic lineup that was shown to her by police the day after the incident. But a week or two later she was shown another photographic lineup, and she identified defendant.[1] She told police she was 75 to 80 percent sure defendant was the assailant, based on his eyes. She agreed that she had also considered another person's photograph. The victim testified that at the preliminary examination, defendant looked different than he did at the time of the incident, but she was "probably 80 percent sure that it was the same gentleman." At trial, she positively identified defendant.

The second victim's daughter viewed a photographic lineup about a week after the incident. She identified defendant and was "pretty conclusive" about it, although when asked to clarify what she meant by that, she indicated she was 60 percent certain, and she agreed she had told the police she was 50 or 60 percent certain defendant was the perpetrator, with the only thing being different from her memory of the attacker was that the nose in the photograph looked a little wider. She testified that she was similarly certain at defendant's preliminary

---

[1] Defense counsel cross-examined the victim regarding when she had seen an implicating newspaper article containing defendant's photograph, and she testified that the article, which she had in her purse at trial, had not been published until a couple of weeks after she viewed the second photographic lineup, where she had identified defendant.

examination.[2] Although the perpetrator's head was covered by the hood of his black sweatshirt during the incident, his eyes stood out to her. She agreed at trial that she could not be 100 percent certain defendant was the perpetrator.

The second victim was not able to conclusively identify defendant during the photographic lineup, but she testified at trial that she did specifically point him out among the photos, as his eyes looked familiar. At defendant's preliminary examination, she again pointed at defendant's photo when shown the photographic lineup, again noting the person's eyes, but she could not say with certainty that it was the perpetrator, although she did point at defendant in the courtroom and identify him as the perpetrator. At trial, she again identified defendant's eyes to be the same eyes she identified during the photographic lineup.

The third victim identified the perpetrator's general height, but she was not able to identify the perpetrator in photographic lineups or at the preliminary exam, and she had passed away before trial.

Since all of the witnesses did not conclusively identify defendant, he contends that the prosecution presented insufficient evidence to support his convictions. However, defendant disregards the fact that the first victim positively identified him as the perpetrator at trial and the second victim positively identified him at the preliminary examination. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (indicating that positive identification by a witness may provide sufficient support for a defendant's conviction). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*. Even if all of the witnesses that testify regarding a defendant's identity are unable to agree conclusively that the defendant committed the crimes, and inconsistencies exist in their testimony, a jury is nevertheless free to conclude that the witnesses are credible. See *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). The jury clearly believed that the witnesses who testified herein gave credible testimony about the robberies. Witness credibility is a matter for the jury to decide, and this Court "will not interfere with the jury's determinations regarding the . . . credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Defendant also argues that the prosecution failed to produce physical evidence, such as DNA or fingerprint evidence, to link him to the crimes. Defendant contends that the lack of direct or physical evidence connecting him to the crimes means that the prosecution never established his identity as the perpetrator of the crimes. However, physical evidence is not required to prove that defendant committed the crimes; circumstantial evidence, as well as the reasonable inferences a fact-finder can draw from the evidence, can constitute sufficient proof of the elements of a crime. *Fletcher*, 260 Mich App at 560. In this case, police officers traced purchases made on a Sears's credit card that had been in the second victim's purse when it was stolen. The individual who fraudulently used the credit card purchased Apple products online. The shipping address for the Apple products was to a house directly next door to a house where defendant lived and to a person named "Trey Scott." The police determined that no one named

---

[2] Both the second victim and her daughter testified that they had not seen any news articles about defendant until after the photographic lineup.

"Trey Scott" had ever lived at the shipping address, thus allowing the jury to infer that it likely was a false name. Further, during the execution of a search warrant at defendant's house, items belonging to all three of the victims were found in garbage cans located in the backyard. Namely, they found prescription bottles, two packages of hearing aid batteries, an empty rosary case, and a distinctive card that had been in the first victim's purse, a VFW Lifetime membership auxiliary card from the second victim's purse, and a checkbook from the third victim's purse. From this circumstantial evidence, a rational trier of fact could have inferred that defendant made fraudulent purchases with the second victim's credit card and threw items from all of the victims' purses into a garbage can on the property.

The discovery of items belonging to the victims on defendant's property supports a reasonable inference that defendant was the perpetrator of the crimes. However, defendant argues that he cannot be linked directly to the items because there is no proof that he had exclusive control over the real property where the items were found. A jury may infer that a defendant committed theft or robbery if the defendant possesses recently stolen property. *People v Hayden*, 132 Mich App 273, 283 n 4; 348 NW2d 672 (1984). Defendant asserts, however, that the jury may only make this inference if the prosecution can demonstrate that defendant had exclusive control over the property where the stolen items were located. Defendant cites no caselaw that directly supports his argument, and this Court found no caselaw specifically stating that, in order for a jury to make a reasonable inference that a defendant committed a theft or robbery, the prosecution is required to introduce evidence that the defendant had exclusive control or dominion over the property where stolen items were discovered. Moreover, this Court has previously determined that a defendant's possession and subsequent disposal of stolen items supported an inference that the defendant was a thief and intended to commit the crime of larceny. See *People v Hughey*, 186 Mich App 585, 592; 464 NW2d 914 (1990) (indicating that evidence that the defendant possessed and disposed of recently stolen property supported a finding that the defendant intended to commit larceny).

Ultimately, " '[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to those inferences.' " *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). When examined in the light most favorable to the prosecution, the evidence presented at trial was sufficient to support the jury's conclusion that defendant was the perpetrator of the charged crimes and, therefore, to support defendant's convictions.

## II. HABITUAL OFFENDER NOTICE

Defendant argues that he is entitled to resentencing because the prosecution failed to file a proof of service of the habitual offender notice, under which the prosecution sought to enhance his sentence as a fourth habitual offender, MCL 769.12. We disagree.

Whether defendant was properly served with notice of the prosecution's intent to seek an enhanced sentence based on defendant's status as a fourth habitual offender is a question that "is reviewed de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules." *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).

Sentence enhancements based on a defendant's prior felonies are governed by MCL 769.13, which provides in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.
>
> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

The record shows that the prosecution filed a notice of intent to enhance defendant's sentence based on his status as a fourth habitual offender on March 16, 2016, along with the felony information and the prosecution's witness list. Defendant does not dispute that the prosecution filed the notice within the 21-day window for filing because the prosecution filed it at the same time as the felony information, but he correctly argues that the prosecution filed no proof of service in the lower court. However, if the record shows that defendant had actual notice of the prosecution's intent to seek an enhanced sentence, and defendant cannot demonstrate that he suffered prejudice by the failure to file a proof of service for the habitual offender notice, we deem the error harmless. See *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

At a pretrial hearing, defendant acknowledged through his attorney that he received copies of the documents filed with the felony information, including the witness list and habitual offender notice. At a second pretrial hearing, the prosecution mentioned on the record that defendant faced a maximum of life imprisonment for the unarmed robbery charges, and specifically stated that they were "life offenses by the fact that they're habitual fourth" offenses. Given that the habitual offender notice was filed with the felony information and was discussed on the record at a pretrial hearing, defendant clearly had actual notice of the prosecution's intent to seek an enhanced sentence under MCL 769.12, and he cannot properly demonstrate that he was prejudiced or prevented from responding to the habitual offender notice. Thus, the

prosecution's failure to file a proof of service constitutes harmless error. Accordingly, defendant is not entitled to resentencing.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering