*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DELONZO TERRELL POLLARD, SR.,

Defendant-Appellant.

UNPUBLISHED
December 17, 2024
11:15 AM

No. 367634
Muskegon Circuit Court
LC No. 2020-004241-FH

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts related to firearm possession: Count I (possessing a firearm while ineligible to do so), MCL 750.224f(2); Count II (possessing ammunition while ineligible to do so), MCL 750.224f(3); and Count IV (possessing a firearm when committing or attempting to commit a felony), MCL 750.227b.[1] Defendant challenges the sufficiency of the evidence to support the identity element for these convictions. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an undercover drug operation facilitated by the West Michigan Enforcement Team (WEMET). On September 9, 2020, WEMET Officer Emily Blum set up a controlled drug purchase between a confidential informant and a suspected drug dealer, whom the informant identified as "Zo." The informant placed a phone call to Zo in front of Officer Blum, asked to purchase crack cocaine, and arranged to meet Zo at a house located on Eighth Street in Muskegon Heights, Michigan.

At the time of the purchase, WEMET detectives were aware of two previous controlled buys conducted at the house from earlier in 2020. The surveilling detectives observed the

---

[1] The jury also convicted defendant of resisting and opposing a police officer, MCL 750.81d(1); he does not appeal that conviction.

informant enter the house without making any stops or meeting with anyone else. The informant then returned to Officer Blum with a substance that Officer Blum field tested, revealing that the substance was cocaine-based.

Officer Blum used several techniques to confirm the identity of the alleged drug dealer, including searching prior criminal reports and utility bills associated with the address of the house. Officer Blum also looked at the Muskegon Property Viewer and conducted a Law Enforcement Information Network (LEIN) inquiry for the two vehicles in the driveway at the house. Each search indicated that defendant owned the house and cars. Officer Blum showed a picture of defendant to the informant; the informant confirmed that the man in the picture was Zo, who was also the man that sold drugs to the informant.

The next day, WEMET detectives obtained and executed a search warrant for the house on Eighth Street. Throughout the house, detectives found items consistent with the sale of narcotics, as well as the money that the informant used to purchase the drugs the previous day. In the master bedroom closet, detectives also found a gun loaded with a magazine containing five rounds of ammunition. Detectives found two additional rounds of ammunition in the bedroom and two rounds of ammunition in a drawer in the basement.

Defendant, who had been convicted of at least three prior specified felonies, was arrested and charged for his possession of a firearm and ammunition. The jury convicted defendant as previously described. This appeal followed.

## II. STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence by examining the evidence de novo "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). " '[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "The prosecution need not negate every theory consistent with innocence, but is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009).

## III. ANALYSIS

Defendant contends the evidence was insufficient to establish the identity element of his firearm-related convictions. We disagree.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identification may be established through direct or circumstantial evidence. See *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016); *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Intertwined with identity is the possession element of the convictions at issue. See MCL 750.224f; MCL 750.227b. Possession can be either actual or constructive. *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and

it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession." *Id*. at 470-471. Whether actual or constructive, possession may be sole or joint. *Id*. at 470. "If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint." *Id*. (quotation marks and citation omitted).

The evidence at trial sufficiently established that defendant constructively possessed the firearm and ammunition.[2] The jury heard detectives testify that they discovered the loaded gun in the closet of the upstairs master bedroom. The bedroom contained only men's clothes, shoes, and personal items; there was no evidence that a woman stayed in that room. The shoes and clothing in the closet were also consistent with those defendant wore to trial. More concretely, detectives found defendant's wallet and his driver's license in the closet near the gun, as well as court probation paperwork with his name on it on the nightstand. The jury also heard a recording of defendant telling detectives, "I know there's a gun in there" and "I have a right to bear arms."

Additionally, before executing the warrant that uncovered the gun, detectives made three undercover, controlled drug purchases at that house. The confidential informant who participated in the final controlled purchase identified defendant as the drug dealer and provided defendant's phone number to detectives; detectives then used that phone number to search prior criminal reports. Detectives also searched utility bills associated with the address of the house, reviewed the Muskegon Property Viewer, and conducted a LEIN inquiry for the two vehicles in the driveway at the house. Each search indicated that defendant owned the house and cars in the driveway.

The jury also heard evidence consistent with defendant's position that he did *not* live at the house. Detectives testified that they found more than one address associated with defendant; for example, defendant's driver's license listed an address other than the house where detectives found the gun. Defendant testified that, although he owned the house, he did not live there—rather, the mother of his children and his son, who shared his same name, lived at the house when the gun was found. And when detectives asked defendant who owned the gun, he told them to ask the "lady of house"—ostensibly referring to the mother of his children. Finally, detectives did not have the gun tested for DNA or fingerprints.

That there may have been evidence in support of defendant's theory of innocence, however, does not mean that the evidence of his guilt was insufficient. See *Chapo*, 283 Mich App at 363-364. And the prosecution countered much of that evidence. Detectives testified that it is common for drug dealers to use a different address on a driver's license to "protect their enterprise." Detectives also testified that they test a gun for DNA only when it was used in a violent crime and, moreover, that there was no need to test for fingerprints or DNA when detectives had so much evidence that the gun belonged to defendant. Finally, defendant's son was not present at the time of the search, and there was no evidence, other than defendant's testimony, that his son lived at that address.

"In reviewing the sufficiency of the evidence, this Court must draw every reasonable inference in favor of the prosecution." *People v Haynes*, 338 Mich App 392, 423; 980 NW2d 66

---

[2] The gun was registered to another man and was reported stolen.

(2021). "[I]t does not matter that the evidence gives rise to multiple inferences"—the jury alone determines what inferences to draw. *Id.* As summarized above, there was ample evidence to support the inference that defendant constructively possessed the gun and ammunition that detectives found at that house. Defendant has failed to show that, when this evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could not have found the identity element of the offenses at issue proven beyond a reasonable doubt. *Roper*, 286 Mich App at 83.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani