# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AHMAD JAEEL DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2017

No. 331718
Ingham Circuit Court
LC No. 15-000054-FC

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life in prison for the first-degree felony-murder conviction, 225 months to 880 months' imprisonment for the armed robbery conviction, 160 months to 240 months' imprisonment for the first-degree home invasion conviction, 38 months to 60 months' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

The victim and his long-time girlfriend, Rachel Johnson, sold marijuana from their house. On the evening of May 4, 2014, the victim and Johnson were sitting on the couch watching television. Because the weather was nice, they left the front door to the house open, but locked the screen door. Johnson heard the sound of the screen door being forced open. A man walked into the house with a gun, demanding, " 'Give me everything you got.' " Johnson sat on the couch in shock and stared at the intruder, who she described as a black male wearing dark clothes and a bandana that covered the lower part of his face. Johnson identified defendant as the intruder at trial, noting that on the night of the shooting, his eyes stood out to her because they were distinctive.

The victim pulled some money out of his pocket and threw it on the floor. However, the intruder insisted that he wanted everything they had. At that point, Johnson's dog came up to the intruder and started biting at him. A fight ensued between the victim and the intruder. As

Johnson ran out of the house to get some help, she heard a gunshot, heard her dog yelp, and heard a second shot after a short pause. Johnson ran to her neighbor's house for help. The neighbor grabbed a bat and came back to the house with Johnson. When they arrived at the house, the intruder and the money were gone, and the victim was lying on his back, bleeding from the armpit and mouth.

The victim sustained two gunshot wounds and blunt-force injuries. Lansing Police Detective Scott Polhemus processed the scene and testified that he found blood splatters all over the wall of the front doorway leading into the house. He collected samples from the blood found on the wall next to the entrance of the dining room, the front door entryway, the living room floor, the dining room floor, the wall of the living room, and the interior of the front door knob. He also found blood on the sidewalk and the front steps leading to the house. The samples were submitted to the police crime laboratory.

Lansing Police Detective Brad St. Aubin testified that after he visited the crime scene, he assumed that a drug deal had gone bad. During his investigation, he received an anonymous tip identifying defendant as the shooter. His interest was piqued because the tip stated that defendant had shot himself in the web of the hand and, while Detective St. Aubin was not sure whether the intruder sustained any gunshot wound, he knew that the victim had been shot in the web of the hand. Officers obtained a DNA sample from defendant. The sample ultimately matched blood samples from the home.

## II. ANALYSIS

### A. SIXTH AMENDMENT RIGHT TO CONFRONTATION

Defendant first argues that Detective St. Aubin's testimony about the anonymous tip violated his Sixth Amendment right to confront the witnesses against him. We disagree.

Defendant did not preserve this issue by raising in the lower court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "Reversal is warranted only if the unpreserved error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Taylor*, 252 Mich App 519, 523; 652 NW2d 526 (2002).

The United States Constitution and Michigan Constitution guarantee an accused the right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012).

> The United States Supreme Court has recognized that a primary objective of the Confrontation Clause is to compel witnesses to "stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and

the manner in which he gives his testimony whether he is worthy of belief." *People v Buie*, 285 Mich App 401, 408; 775 NW2d 817 (2009) (citation omitted).

A statement by a confidential informant to the authorities generally constitutes a testimonial statement. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 10-11. A statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. *Id*. "Specifically, a statement offered to show why police officers acted as they did is not hearsay." *Id*. at 11.

Detective St. Aubin testified that the police identified defendant as a possible suspect in the crime on the basis of information provided by an anonymous tip. His testimony was not offered to prove the truth of the information supplied by the tipster. Rather, it was offered to explain why Detective St. Aubin identified defendant as a possible suspect and decided to obtain a DNA sample for comparison. Moreover, not all the information provided by the tipster was true, and Detective St. Aubin could not have offered it to prove that it was true. While the tipster stated that defendant had shot himself in the web of the hand during the incident, the only evidence was that the *victim* sustained a gunshot wound to the hand. Because the testimony about the anonymous tip was not offered to establish the truth of the information, its admission did not violate the Confrontation Clause.

Furthermore, we conclude that, even assuming that the testimony regarding the tip was improper, the error was not outcome determinative in light of the strength of the evidence presented by the prosecution. The prosecution presented DNA evidence linking defendant to the crime scene. In addition, Johnson, an eyewitness to the incident, identified defendant as the perpetrator at trial. In light of this evidence, we conclude that the testimony regarding the confidential informant's tip was not outcome determinative.

Defendant also argues that the prosecutor used the tip in presenting his case and vouched for its credibility. The prosecutor "is free to argue the evidence and all reasonable inferences arising from it as they relate to the prosecution's theory of the case[.]" *People v Schumacher*, 276 Mich App 165, 178-179; 740 NW2d 534 (2007). During closing arguments, defense counsel argued that Detective St. Aubin had insufficiently investigated the crime because he had not ruled out other possible suspects. During rebuttal argument, the prosecutor stated, in pertinent part, as follows:

> [Defense counsel] talks about witnesses who we didn't present. Witnesses, Ladies and Gentlemen, who you know that Alex Kemper was talked to by Detective St. Aubin and is not a suspect and was not there at the time of the shooting. He talks about witnesses or possible other suspects that he claims the detective, and in fact, let's be honest. He calls the detective lazy. Did not try and track down.
>
> But, we know, based on the information and the records, that we have these two men, Skee and Skee's bro. One, we don't have a name for, just a phone number. We know that they are not in the area. These numbers are not in the

area.  Detective tried to follow up.  He went to telecom orders, search warrants, and went through the records and found nothing that was a viable lead after that.  And he does that with the understanding and knowledge that he has already got a tip and credible DNA evidence against this man over there.

The prosecutor did not discuss the tip to vouch for its credibility.  Rather, the prosecutor's statements were in response to defense counsel's arguments that the detective did not conduct a thorough investigation.  Therefore, defendant's argument on this point is without merit.

## B.  IMPROPER VOUCHING AND BOLSTERING OF WITNESSES CREDIBILITY

Defendant next argues that Detective St. Aubin improperly vouched for and bolstered several witnesses' credibility and that his testimony contained inadmissible hearsay.  We disagree.

Defendant failed to preserve this issue below by objecting to the testimony.  See *Metamora Water Serv, Inc*, 276 Mich App at 382.  Again, we review unpreserved issues for plain error affecting the defendant's substantial rights.  *Carines*, 460 Mich at 763.

Generally, it is improper for a witness to provide an opinion on the credibility of another witness because matters of credibility are to be determined by the jury.  *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).  However, an individual's comments regarding a witness's "responses and demeanor" do not constitute "an expression of personal belief in the witness's credibility."  *People v Stout*, 116 Mich App 726, 730; 323 NW2d 532 (1982).

## 1.  DETECTIVE ST. AUBIN'S TESTIMONY ABOUT ALEX KEMPER

Detective St. Aubin testified that throughout the investigation, Alex Kemper, a friend of Johnson and the victim, was a witness, rather than a suspect.  He explained that he eliminated Kemper as a suspect because

Kemper was at that house every day multiple, many times a day.  He was their main marijuana customer, a friend of [the victim].  If he was into that house that night, one, he's not a black male.  If he was in the house that night, [Johnson] would recognize [his] voice, his body, everything.  His eyes, she would really recognize those eyes for sure.

Detective St. Aubin further explained that the perpetrator left DNA at the scene of the incident and that, "other than that DNA, you have got a black male, who matches the physical description of [defendant], but you have no identification other than science."  He further explained, following a question regarding whether Kemper was a suspect or a witness:

Well, there was some stuff that *was told* that there was an incident that happened maybe a month beforehand that he was present for.  I don't think he's a witness to this specific thing because there was nothing up to that point that said Mr. Kemper was at the house to witness what happened on the night of the fourth,

-4-

into the fifth, but he might have some knowledge that might lead us in a direction that would help us out. [Emphasis added.]

He further testified that Kemper remained a witness throughout the investigative process, explaining, "I guess that maybe somehow he told somebody where somebody lived, but that information has not come forward. So I view him as a witness."

Defendant argues that by characterizing Kemper as a witness and not a suspect, Detective St. Aubin essentially asked the jury to eliminate any nonblack male as a suspect in the murder. However, when taken in context, Detective St. Aubin was merely testifying about the investigation carried out in this case, the various leads he pursued, and how he eliminated Kemper as a suspect. His testimony merely provided a context for the jury of the investigation and how it eventually led to defendant. See *People v Bennett*, 290 Mich App 465, 477; 802 NW2d 627 (2010).

Defendant also argues that Detective St. Aubin's testimony regarding Kemper contained inadmissible hearsay. Defendant points to Detective St. Aubin's testimony regarding what he "was told" and what Kemper told him. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible. See MRE 802. In this case, to the extent that Detective St. Aubin discussed information he was told regarding Kemper or information that Kemper told him, the information was not admitted to prove the truth of the matter asserted, but rather, to show the effect of the information on Detective St. Aubin's investigative process and the reasons why he eliminated Kemper as a witness.

## 2. DETECTIVE ST. AUBIN'S TESTIMONY ABOUT THE PHONE NUMBERS

Detective St. Aubin also testified regarding a note that Kemper gave Johnson and that Johnson provided to Detective St. Aubin. In the note, Kemper discussed the identity of the shooter, stating, "[T]his dude Skee, that he might know who did it, and Skee and Skee's brother." In addition, the note contained two telephone numbers. Defendant characterizes as hearsay the following testimony by Detective St. Aubin regarding the phone numbers:

> Well, they were numbers that were provided by Mr. Kemper that he had from the drug rip a month before. That doesn't necessarily mean that those same numbers are the same people that—er, same person that is involved in the homicide on the fourth and into the fifth. It kind of fills in that maybe there was a backstory to what happened. Maybe it carried over into the next month. Maybe it's a totally separate incident.

With regard to the telephone numbers, Detective St. Aubin testified:

> Well, Mr. Kemper provided those numbers. Like I said, I did the search warrants or the court orders on those. One of the people—I think the 217 number came back to a Malik Terry. The last time the Lansing Police Department had contact with Malik Terry was years ago.

Contrary to defendant's assertion, the statements do not constitute hearsay. The testimony regarding the telephone numbers was not admitted to prove the truth of the matter asserted. Rather, Detective St. Aubin stated that the numbers provided a likely "backstory" to the shooting and that he obtained a search warrant for the numbers based on his theory. Detective St Aubin's testimony was proper and admissible because it was offered to show why he acted as he did.

Defendant also contends that Detective St. Aubin's testimony regarding the telephone numbers constituted "vouching for his own investigation." He argues that the testimony indicates that Detective St. Aubin had concluded that no one other than defendant could have committed the crime. However, as with the statements discussed above, we conclude that the statements regarding the telephone numbers were admitted to show the investigative process. Detective St. Aubin's statements regarding the telephone numbers do not indicate that he improperly vouched for the credibility of a witness, but instead, merely illuminate Detective St. Aubin's thought process during the investigation.

### 3. DETECTIVE ST. AUBIN TESTIMONY ABOUT JOHNSON

Defendant contends that Detective St. Aubin vouched for Johnson's credibility by telling the jury that defendant meets the description of the shooter given by Johnson. Again, the testimony was offered to explain the investigative steps Detective St. Aubin took. Detective St. Aubin testified that after he received the anonymous tip, he compared the description of the assailant given by Johnson to defendant's description and determined that defendant's physical appearance was similar to Johnson's description. Even if the evidence was improper, defendant cannot show that it was outcome determinative in light of the DNA evidence tying defendant to the scene of the incident and the eyewitness identification of defendant as the shooter.

Further, defendant argues that Detective St. Aubin vouched for Johnson's credibility when he testified that he knew she was lying earlier in the investigation:

*Q.* Ms. Johnson testified that she withheld and lied to you about the fact that there were drugs. Did that, in any way, substantially impair your investigation?

*A.* No, not really. I mean, like I said, some of these drug rips go reported [sic], and you can kind of tell there is something not right. Typically people's homes just don't get randomly broken into and say "Give me everything you got. Give me your money." There is a reason why those houses get targeted usually.

We kind of figured there was an underlying reason, but minimizing or lying about them not dealing drugs out of there didn't really impact the direction of the investigation. What it did is it just slowed it.

This testimony did not vouch for Johnson's credibility. Vouching for a witness's credibility means placing a "stamp of approval" on the witness's testimony, *Bennett*, 290 Mich

-6-

App at 479, or conveying to the jurors special knowledge regarding the witness's truthfulness, *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Detective St. Aubin did not put his stamp of approval on Johnson's testimony. Instead, Detective St. Aubin testified that Johnson initially lied to the police about the drug sales from the house and that lie slowed down the investigation. These statements were proper because an individual's comments regarding a witness's "responses and demeanor" do not constitute "an expression of personal belief in the witness's credibility." See *Stout*, 116 Mich App at 730.

## 4. DETECTIVE ST. AUBIN'S TESTIMONY ABOUT DEFENDANT

Defendant contends that Detective St. Aubin invaded the province of the jury by testifying that defendant was the only viable lead, thereby suggesting to the jury that other leads could be excluded. During trial, the prosecutor asked Detective St. Aubin whether he had any other viable leads other than defendant, and Detective St. Aubin responded, "No. None." However, defendant isolates this statement from its context. Before and after testifying that he did not have any other viable leads, Detective St. Aubin explained the process of his investigation. When taken in context, the testimony did not invade the province of the jury. Therefore, we conclude that Detective St. Aubin did not improperly opine on defendant's guilt.

## C. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to convict him of the offenses. Specifically, defendant challenges the sufficiency of the evidence identifying him as the shooter. We disagree.

We review de novo sufficiency of evidence issues. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id.*

Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness may be sufficient to support a conviction for a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.* Defendant argues that Johnson's identification of him as the perpetrator was flawed because she had limited opportunity to identify the intruder, whose face was concealed with a bandana. Specifically, defendant argues that Johnson looked at defendant's photograph in the newspaper after his arrest, and that is why she identified him as the shooter at trial.

There is nothing in the record to indicate that Johnson's identification was flawed. While the intruder covered the lower half of his face with a bandana, this would not have prevented Johnson from observing his eyes and physical characteristics. At trial, Johnson testified that when the intruder walked into the house, she stared at him in shock. Additionally, there was testimony that Johnson indicated that defendant had "beady eyes." Johnson identified defendant in court as the intruder, specifically stating that defendant's eyes stood out to her because they were distinctive. Although she admitted to looking at defendant's photograph "a few times"

after his arrest, the jury was able to consider that against her ability to identify defendant on the basis of his eyes and physical characteristics on the night of the shooting.

Defendant also argues that Johnson's credibility was undercut by the fact that she testified under a grant of immunity. However, the jury was apprised of Johnson's immunity and was able to take that into account in determining whether defendant was guilty. Again, the credibility of witnesses and the weight accorded to evidence are questions for the jury. See *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Accordingly, defendant's claim is without merit.

Next, defendant argues that apart from the DNA evidence and unpersuasive circumstantial evidence there was no evidence that he was the shooter. We disagree. " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *Carines*, 460 Mich at 757 (citation omitted). In this case, Johnson testified that an intruder who she identified at trial as defendant entered her home on the night of the shooting with a gun. The victim attacked the intruder and the men began fighting. Johnson heard two gunshots as she ran to a neighbor's house. When Johnson returned to the house with a neighbor, defendant and the money were gone. The blood found at the scene matched defendant's DNA profile. Viewed in the light most favorable to the prosecution, the DNA evidence, together with Johnson's identification of defendant, was sufficient for the jury to find defendant guilty of the crimes.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he received ineffective assistance of counsel. Defendant failed to preserve this issue by raising it in a motion for a new trial or a *Ginther*[1] hearing, *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014), and therefore our review is limited to mistakes apparent from the record, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defendant bases his claims of ineffective assistance on two alleged errors. First, defendant argues that counsel was ineffective for failing to object to Detective St. Aubin's testimony about the contents of the anonymous tip because it violated his right to confront the witnesses against him. As previously discussed, this testimony regarding the contents of the anonymous tip did not violate defendant's right to confront the witnesses against him because it was not offered for the truth of the matter asserted. See *Chambers*, 277 Mich App at 10-11. Because the testimony was proper, defense counsel was not ineffective for failing to object to it. *People v Ericksen,* 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Second, defendant also argues that counsel should have objected to Detective St. Aubin's testimony that bolstered and vouched for witnesses' credibility. Again, Detective St. Aubin's testimony did not bolster or vouch for witnesses' credibility but merely explained his investigation, the leads he pursued, and how defendant was identified as a suspect in the crime. Therefore, any objection would have been futile. Accordingly, defendant was not denied the effective assistance of counsel.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad