*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LAMELLE DESHAWN CHILDERS,

      Defendant-Appellant.

UNPUBLISHED
June 15, 2023

Nos. 359391; 359392; 361917
Muskegon Circuit Court
LC Nos. 2020-004946-FH; 2020-
      004947-FH; 2020-
      004945-FH

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Defendant was charged in three separate lower court cases with a total of three counts of delivery of methamphetamine, second or subsequent offense, MCL 333.7401(2)(b)(*i*); MCL 333.7413(1). A jury convicted defendant in two of the cases and found him not guilty in the third case. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 7 to 26 years' imprisonment for each of his convictions. The sentences are to be served concurrently. Defendant appeals as of right.[1] We affirm.

The delivery of methamphetamine charges in the three consolidated cases related to the alleged sale of methamphetamine to an undercover police officer, Detective Thomas Schmidt of the West Michigan Enforcement Team (WMET), in Muskegon County on three dates: March 9, 2020, March 11, 2020, and May 16, 2020. Over defendant's objection, the trial court sua sponte joined the three cases for trial on the first day of trial. In joining the charges, the trial court emphasized that the three cases were all noticed for trial on the same date and that judicial economy strongly supported joinder given that the witnesses were identical in the three cases.

---

[1] In Docket No. 359392, defendant appeals as of right the judgment of sentence in lower court case 2020-004947, and in Docket No. 361917, defendant appeals as of right the judgment of sentence entered in case 2020-004945. In Docket No. 359391, defendant also appeals as of right a judgment of sentence that was erroneously entered in lower court case 2020-004946. The three appeals were consolidated by this Court. See *People v Childers*, unpublished order of the Court of Appeals, entered October 5, 2022 (Docket Nos. 359391, 359392, and 361917).

In terms of the testimony at trial, most notably, Detective Schmidt testified that WMET received a tip about a phone number that could be called to purchase drugs from defendant. Detective Schmidt also testified that on the three dates in question, he communicated with defendant using that phone number to arrange the purchase of methamphetamine, and on each date, he met defendant face-to-face to purchase methamphetamine. Detective Schmidt identified defendant as the individual who sold him drugs on each date.

The jury convicted defendant of the charges related to the events on March 11, 2020 (case 2020-004945) and May 16, 2020 (case 2020-004947), but the jury found defendant not guilty with respect to the events on March 9, 2020 (case 2020-004946). However, as a result of some apparent confusion about the docket numbers, a judgment of sentence erroneously entered in case 2020-004946 and an order of acquittal erroneously entered in case 2020-004945. The trial court later corrected the errors in the docket numbers related to the judgment of sentence and the order of acquittal.

## I. JOINDER OF THE CASES

Defendant first argues that the trial court abused its discretion by joining the three cases sua sponte on the first day of trial. According to defendant, the last-minute joinder "blindsided" defense counsel and prejudiced the defense, thereby denying him his right to a fair trial in each case.

> Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts. [*People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (quotation marks and citation omitted).]

Permissive joinder of charges is governed by MCR 6.120(B), which in part states:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

In comparison, under MCR 6.120(C), if offenses are not "related" within the meaning of MCR 6.120(B), the trial court must sever the charges for a separate trial if the defendant moves to sever the offenses.

For purposes of MCR 6.120, "multiple offenses may be 'related' as part of a single scheme or plan despite a lack of temporal proximity." *People v Williams*, 483 Mich 226, 241 n 18; 769 NW2d 605 (2009) (quotation marks and citation omitted). However, offenses are not "related" "simply because they were of the same or similar character." *Id*. at 235 (quotation marks and citation omitted). Whether evidence of the separate charges would be admissible in separate trials is "an important consideration" because joinder of charges "cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Id*. at 237 (quotation marks and citation omitted). Ultimately, when "counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." *Id*. (quotation marks and citation omitted).

Defendant does not appear to dispute that the three drug charges were related within the meaning of MCR 6.120(B). The three cases all involved the sale of methamphetamine to Detective Schmidt and the same cell phone was used to arrange all three sales. The sales took place on three separate dates, between March and May 2020, in Muskegon County. Although the sales occurred on different days, on each occasion defendant was engaged in the same scheme to sell methamphetamine to Detective Schmidt. The offenses were clearly related. Cf. *id*. at 234-235 (concluding that drugs charges arising from two separate drug raids, months apart, were related and properly joined); *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012) (concluding that multiple drug deliveries from the defendant to the same buyer, "while separate crimes, were connected acts" that were related for purposes of MCR 6.120).

Rather than contest the relatedness of the charged offenses for purposes of MCR 6.120, defendant's arguments speak more to the other "relevant factors" under MCR 6.120(B)(2). Defendant contends that he was "blindsided" when the trial court raised the issue on the first day of trial and that the joinder unfairly prejudiced him. A review of the record does not, however, support defendant's contention.

With regard to the timing of the trial court's decision, although the trial court decided to join the cases for trial on the first day of trial, as noted by the trial court, all three cases were noticed for trial on the same date. According to defense counsel's testimony at an evidentiary hearing after trial, the parties and the trial court were discussing—as recently as the day before trial—which case would be tried first, and a decision had not yet been made on which case would go first. Given that the cases were noticed for trial on the same date and that the parties had not yet agreed on a single case to try first, defense counsel was presumably prepared to try any of the three cases on August 31, 2021 when he appeared for trial that day. Moreover, defense counsel's performance, including his cross-examination of Detective Schmidt, amply demonstrated his

-3-

preparedness and his familiarity with the facts of all three cases. Defendant—and the prosecutor—may have been surprised by the last-minute joinder of the three cases, but for purposes of MCR 6.120(B)(2), "the parties' readiness for trial" actually supports the trial court's joinder decision.

Additionally, to the extent that defendant takes issue with the timing of the trial court's sua sponte decision, when the trial court takes action on its own initiative to join offenses for trial, MCR 6.120(B)(3) requires the trial court to "provide the parties an opportunity to be heard." The trial court fulfilled this obligation by providing defendant with an opportunity to voice his objections to joinder of the offenses.[2] Defendant has not shown an abuse of discretion on the basis of the timing of the trial court's decision.

Defendant also claims that he was prejudiced by the joinder. He fails, however, to explain how joinder of the charges unfairly prejudiced him. The facts of the three cases were not complex, and there was little risk of juror confusion. See *Gaines*, 306 Mich App at 305 (noting lack of complexity and "little potential for confusion" as factors supporting joinder of charges). Substantively, the evidence would be admissible at separate trials under MRE 404(b), a fact which supports the propriety of joinder in this case. See *Williams*, 483 Mich at 237. As noted, defendant was also aware of all the facts of the three cases before trial. Further, defendant's defense to all three cases was the same: misidentification. On appeal, he does not even attempt to explain what he might have done differently if the cases had been tried separately.

Further, the trial court also took steps to minimize any potential prejudice from the joinder by instructing prospective jurors during voir dire that defendant was "entitled to a separate consideration for each of those three charges," and by reiterating in the final jury instructions that the fact that defendant was "charged with more than one crime" was not evidence, that the jurors could not "mix and match elements" from the different dates to arrive at a conviction, and that they must determine for "each date" whether defendant was guilty or not guilty. Jurors are presumed to follow their instructions, and these limiting instructions helped alleviate any potential prejudice. See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014). Indeed, the jury in fact found defendant not guilty of one of the joined counts, supporting that defendant was not unfairly prejudiced by the joinder.

Lastly, aside from timing and prejudice concerns, the convenience of the witnesses also supported joinder. See MCR 6.120(B)(2). There was a total of three witnesses: Detective Schmidt, the WMET property manager who testified regarding the chain of custody for the drugs, and the forensic analyst who tested the drugs. All three witnesses would have testified in all three cases, presenting largely the same testimony in each case. Judicial economy and the convenience of the witnesses strongly supported joinder under MCR 6.120(B). In sum, the trial court did not abuse its discretion by joining logically related offenses involving overlapping proofs. See *Williams*, 483 Mich at 237.

---

[2] Defendant makes the cursory assertion that defense counsel provided ineffective assistance by failing to place all the facts relevant to a joinder decision on the record before the trial court. In actuality, the record supports that defense counsel promptly and specifically objected to the joinder of the charges. Defense counsel was not ineffective simply because his objection proved unsuccessful. See *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016).

## II. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the prosecutor failed to present sufficient evidence, particularly with regard to identity, to support defendant's convictions. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [*Id*. (citations omitted).]

The jury convicted defendant of two counts of delivering methamphetamine, relating to drug sales on March 11, 2020 and May 16, 2020. The elements of this offense are: (1) that the defendant delivered a controlled substance, (2) that the substance delivered was methamphetamine, and (3) that the defendant knew he was delivering methamphetamine. *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). It is also "well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Viewing the evidence in a light most favorable to the prosecutor, the evidence established that on March 11, 2020, Detective Schmidt called a phone number, which he received as part of a tip indicating that he could call the number to buy methamphetamine from defendant. Detective Schmidt spoke with defendant, whose voice he knew from previous interactions. Detective Schmidt then arranged to meet defendant, and in a face-to-face transaction in broad daylight defendant sold Detective Schmidt methamphetamine. Detective Schmidt identified defendant as the man who sold him drugs on March 11, 2020, and at the time of the drug transaction defendant was also driving a car that police determined was registered to his mother. Similarly, on May 16, 2020, Detective Schmidt received a text message from the same phone number offering to sell him methamphetamine. Detective Schmidt arranged to meet defendant, and in another face-to-face transaction in broad daylight defendant sold Detective Schmidt methamphetamine. Detective Schmidt again identified defendant as the man who sold him drugs on May 16, 2020. Laboratory analysis confirmed that the substance purchased by Detective Schmidt on both occasions was methamphetamine.

Despite this evidence, defendant contends that the evidence was insufficient because the prosecutor failed to establish his identity as the man who sold drugs on the dates in question. According to defendant, Detective Schmidt's identification of defendant was, on its own, insufficient to establish defendant's identity. To the contrary, "positive identification by witnesses may be sufficient to support a conviction of a crime," *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000), and the credibility of identification testimony is a question for the jury. See *id*. Although defendant challenged the reliability of Detective Schmidt's identification of

defendant at trial,[3] and even posited that Detective Schmidt may have mistaken defendant for his brother. Detective Schmidt maintained that he was positive in his identification of defendant, that he was familiar with both defendant and his brother, and that he could tell them apart. The credibility of Detective Schmidt's identification of defendant was for the jury. See *id*. Viewing the evidence in a light most favorable to the prosecutor, Detective Schmidt's positive identification of defendant was sufficient to establish defendant's identity as the individual who sold methamphetamine to Detective Schmidt on March 11, 2020 and May 16, 2020.

Although defendant mainly focuses his arguments on the question of identification, he also briefly claims that Detective Schmidt's assertion that drug sales occurred was not credible because Detective Schmidt received less methamphetamine in May 2020 than he received in March 2020 for the same amount of money, which defendant believes is "incredible" and "just does not happen in the real world." Detective Schmidt explained this discrepancy at trial, testifying that the COVID-19 pandemic resulted in an increase in the price of methamphetamine between March 2020 and May 2020. In any event, the credibility of Detective Schmidt's testimony and the weight of the evidence in light of the different prices were issues for the jury. See *Williams*, 268 Mich App at 419. The prosecutor presented sufficient evidence to support defendant's convictions.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends on appeal that defense counsel provided ineffective assistance, and he offers a long list of purported shortcomings in defense counsel's performance related to counsel's pretrial investigation and discovery requests, the objections made during trial, and the questions asked on cross-examination. Defendant moved the trial court for a new trial on ineffective-assistance grounds, and after holding a *Ginther*[4] hearing, the trial court denied defendant's motion, holding that defendant received the effective assistance of counsel. Deferring to the trial court's factual findings, we likewise see no merit to defendant's arguments.

Whether the defendant received the effective assistance of counsel is a mixed question of fact and law. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). This Court reviews a

---

[3] In the context of his sufficiency argument, defendant asserts that Detective Schmidt used "unduly suggestive" identification techniques insofar as he viewed a photo of defendant before going to the drug buys. However, defendant does not argue that the identification procedures were so impermissibly suggestive as to warrant exclusion on due-process grounds. See generally *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020). Further, he failed to raise this issue in a motion to suppress in the trial court. See *People v Lee*, 391 Mich 618, 626-627; 218 NW2d 655 (1974). At this juncture, defendant's poorly-briefed "unduly suggestive" argument is abandoned. See *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009). And, absent some reason to suppose that Detective Schmidt's identification violated due process, any weaknesses in Detective Schmidt's identification was a proper subject for the jury with the aid of cross-examination, arguments from counsel, and jury instructions on evaluating eyewitness testimony, see *Perry v New Hampshire*, 565 US 228, 245; 132 S Ct 716; 181 L Ed 2d 694 (2012), all of which occurred.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial court's findings of fact, if any, for clear error, while questions of constitutional law are reviewed de novo. *Id.*

"To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted).

## A. DISCOVERY

Defendant first contends that defense counsel failed to request discovery necessary to properly investigate and prepare for trial. In making this argument, defendant contends that a defense attorney must make written discovery requests, and defendant offers a laundry list of specific items that he asserts defense counsel should have obtained during discovery. Defense counsel always has "the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). The record shows that counsel fulfilled that obligation.

As an initial matter, to the extent defendant faults defense counsel for failing to make written discovery requests, we note that defendant fails to provide any authority for the proposition that formal written discovery requests are a requirement of professionally competent representation, and such "rigid requirements for acceptable assistance" are not consistent with the standards governing ineffective-assistance analysis. See *People v Mitchell*, 454 Mich 145, 168; 560 NW2d 600 (1997) ("Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.") (quotation marks and citation omitted). Setting aside defendant's rigid formulation of what he believes was required, the record is clear that his trial attorney—Marc Curtis—made a reasonable investigation before trial, including engaging in discovery.

In particular, at the *Ginther* hearing, Curtis—who has practiced criminal law in Muskegon County for 20 years, both as a prosecutor and as a defense attorney—testified at length regarding discovery generally and his specific efforts to obtain discovery in this case, explaining that he did not file written discovery requests because doing so was unnecessary. He explained that in Muskegon there had "always been an open discovery process with the prosecutors and defense attorney." According to Curtis's testimony, once an attorney files an appearance, he or she has "everything that they have on file" and is "always" given what is needed. If something seemed to be missing, or if there was anything else Curtis wanted, a phone call or an e-mail would suffice to discover whether it existed and to have it provided. This open discovery benefited everybody because the parties were not filing discovery requests back and forth. Consistent with these

practices, Curtis asked the prosecutor for discovery, and, with the exception of information about a confidential tip that the prosecutor refused to disclose, he received everything that he requested that existed. The trial court credited Curtis's testimony regarding his discovery efforts, and contrary to defendant's representations, his testimony regarding discovery demonstrates that he undertook a reasonable investigation of the case. See *Trakhtenberg*, 493 Mich at 52.

Aside from his general complaints about discovery, defendant provides a list of specific items that he believes that counsel should have obtained during discovery. According to Curtis's testimony at the *Ginther* hearing, which the trial court found to be credible, Curtis in fact requested the majority of the items on defendant's list, and he in fact obtained several of the items, including the photo of defendant that Detective Schmidt used to identify defendant, all WMET reports and supplemental reports related to the controlled buys in this case, and a police report relating to the arrest of defendant's brother, which Curtis obtained from the brother's attorney before trial. Curtis also asked for fingerprint analysis, but none had been performed. He also asked for proof of the "tip" that WMET initially received about the phone and defendant, but he was told that they were not going to turn it over. Given that Curtis either obtained these items or at least requested them, defendant did not establish that Curtis failed to request these items during discovery. See *Carbin*, 463 Mich at 600.

Aside from the items that Curtis did seek, defendant also argues that Curtis should have sought phone logs and text messages related to the phone used to arrange the drug buys. At the *Ginther* hearing, Curtis explained, however, that he made a strategic decision not to request this information. His plan was to argue that someone other than defendant could have used the phone, and Curtis did not want to risk uncovering records that might link defendant to the phone. In other words, by not requesting the phone records and text logs, the defense was able to maintain plausible deniability and to hypothesize that someone other than defendant could have used the phone. This was a matter of strategy, and this Court will not second-guess trial counsel on matters of trial strategy. See *Putman*, 309 Mich App at 248.

Defendant also contends that Curtis should have asked for WMET work logs showing assignments of every WMET officer on the day in question. When asked about this information at the *Ginther* hearing, Curtis testified that, although he did not specifically ask for the WMET assignment logs, the assignment information for those involved would have been included in the reports he received. In other words, Curtis had the relevant information he needed, and he had a reasonable basis for not seeking additional assignment logs. Defendant has not shown that his investigation was unreasonable in this regard. See *Trakhtenberg*, 493 Mich at 52.

Next, defendant contends that Curtis should have obtained Detective Schmidt's disciplinary record. Despite defendant's burden to establish a factual predicate, and despite the opportunity for a *Ginther* hearing, defendant failed to ask Curtis about whether he requested or obtained Detective Schmidt's disciplinary record. Accordingly, there is no support for his assertion that Curtis did not request or obtain this information, and defendant has not established a factual predicate for his argument. See *Carbin*, 463 Mich at 600.

Lastly, defendant contends that Curtis provided ineffective assistance by failing to request WMET's policies about "controlled buys." Curtis testified, however, that, as a criminal attorney with 20 years' experience, he has handled numerous drug cases, including those with undercover sales, and that he was familiar with WMET and its practices. It does not appear that Curtis

performed unreasonably by failing to seek policies to further educate himself in this regard. See *Trakhtenberg*, 493 Mich at 52.

In sum, with regard to Curtis's pretrial performance, the record does not support defendant's assertion that Curtis failed to conduct a reasonable investigation and to obtain pertinent discovery. Accordingly, defendant's ineffective-assistance argument in this regard fails because defendant has not shown that Curtis's discovery efforts fell below an objective standard of reasonableness under prevailing professional norms. See *Jackson*, 292 Mich App at 600-601.

Moreover, even assuming some deficiency in counsel's performance, defendant has not shown that he was prejudiced by any of Curtis's alleged failures to request the laundry list of information that defendant now asserts was important. There is, for example, no evidence of the WMET policies or how they would have aided defendant's defense. There is no record of the phone logs or text messages to support that such information would have aided the defense. There is no information about the "tip" and how it would have aided the defense. There is no evidence of fingerprint analysis that would have aided the defense. There is no evidence of Detective Schmidt's disciplinary record or the WMET work logs to show that this information would have aided the defense. There is no evidence of the WMET reports, the photo of defendant, or the brother's police report to support that there was anything favorable to the defense that Curtis failed to present at trial. In short, defendant has not identified anything favorable to the defense that Curtis failed to request or obtain during discovery, and in these circumstances, defendant's ineffective-assistance of counsel claim fails because he has not shown prejudice. See *id.*

## B. FAILURE TO INTERVIEW A POTENTIAL WITNESS

Defendant contends that Curtis provided ineffective assistance by failing to investigate and call a resident of the home where the first drug sale on March 9, 2020 allegedly occurred in the driveway. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). As noted, defense counsel has a duty to make reasonable investigations. *Trakhtenberg*, 493 Mich at 52. This duty does not, however, "impose on defense counsel the unconditional obligation to call or interview every possible witness . . . ." *People v Beard*, 459 Mich 918; 589 NW2d 774 (1998). Despite the opportunity for a *Ginther* hearing, and despite defendant's obligation to develop a record excluding "hypotheses consistent with the view that his trial lawyer represented him adequately," *Mitchell*, 454 Mich at 163 (quotation marks and citation omitted), defendant wholly failed to ask Curtis *why* he did not attempt to speak to anyone who lived in the home.[5] Defense counsel was not required to interview every conceivable witness. See *id.*

Moreover, even assuming that defense counsel should have contacted the resident, defendant cannot show prejudice. The resident's testimony would be potentially relevant, if at all, mainly with regard to the incident on March 9, 2020, but defendant was found not guilty of this

---

[5] We also note that, at the *Ginther* hearing, defendant refused to fully waive his attorney-client privilege, meaning that the full extent of Curtis's strategic reasoning and his conversations with defendant were not presented at the hearing. It is difficult to find ineffective assistance when defense counsel has not been given an opportunity to be heard, which requires a waiver of the attorney-client privilege. See *Mitchell*, 454 Mich at 168-170.

charge. Conceivably, the argument could be made that undermining Detective Schmidt's credibility with regard to the events of March 9, 2020 could have also affected his credibility with respect to the other charges. But, even with regard to the events of March 9, 2020, the resident's testimony would have little, if any, value in this respect. At the *Ginther* hearing, defendant asked the residents general questions about whether she knew defendant and whether, to her knowledge, he had been at her house. She testified that she "knew of him" through mutual friends but that she had never met him. Defendant failed, however, to ask the resident any questions about March 9, 2020, in particular to support that defendant was not at her home on that day. Indeed, the resident testified that she is generally not at home, and at work during the day between 1:00 p.m. and 9:00 p.m., which would include the time of the drug deal in her driveway on March 9, 2020. Given that defendant was found not guilty with regard to the events of March 9, 2020, and given the resident's lack of knowledge about the events of March 9, 2020, defendant has not shown that defense counsel's failure to question her before trial, or to present her as a witness, affected the outcome of trial. See *Jackson*, 292 Mich App at 600-601.

## C. CROSS-EXAMINATION OF DETECTIVE SCHMIDT

Next, defendant argues that defense counsel failed to adequately cross-examine Detective Schmidt to establish that Detective Schmidt mistook defendant for his brother and, in particular, failed to make proper use of the brother's police report—involving Detective Schmidt arresting the brother for a similar offense—to make this point. How to question witnesses is presumed to be a matter of trial strategy, and this Court will not second-guess counsel on matters of trial strategy. See *Putman*, 309 Mich App at 248. Defendant has not overcome this presumption, and he has not shown that Curtis's cross-examination of Detective Schmidt amounted to ineffective assistance. To the contrary, the record demonstrates that Curtis thoroughly cross-examined Detective Schmidt on his identification of defendant. Among numerous other avenues of inquiry aimed at challenging Detective Schmidt's identification, Curtis specifically suggested that Detective Schmidt mistakenly identified defendant when it was in fact defendant's brother who sold him the drugs. Detective Schmidt acknowledged that he also had contact with the brother and that during that contact, the brother used the cell phone at issue in this case and drove a black SUV like the one driven by defendant.

On the whole, and as the trial court found, the record shows a cross-examination by an experienced and competent criminal attorney, which specifically included questions to support the defense theory that Detective Schmidt misidentified defendant when he actually bought drugs from his brother. The fact that defendant was not acquitted of all counts does not support that counsel's strategy was unsound. See *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016). Indeed, the adequacy of Curtis's representation is supported by the fact that defendant was found not guilty of one of the counts. Defendant has not shown that Curtis's cross-examination fell below professional norms, and he has not shown prejudice. See *Jackson*, 292 Mich App at 600-601.

## D. FAILURE TO OBJECT OR TO SEEK A MISTRIAL

We also reject defendant's argument that defense counsel should have objected and requested a curative instruction, or moved for a mistrial, in response to what defendant contends was improper testimony by Detective Schmidt. More specifically, defendant draws this Court's attention to three statements by Detective Schmidt: (1) reference to a mug shot, (2) a suggestion that members of WMET were "aware of" defendant, and (3) testimony that defendant was

surveillance conscious.[6]  An attorney's decision whether to object is generally a matter of trial strategy.  *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).  Indeed, "there are times when it is better not to object and draw attention to an improper comment."  *Id*. (quotation marks and citation omitted).

At the *Ginther* hearing, Curtis was asked about the specific remarks that defendant now challenges, and Curtis testified that in each instance, his decision not to object was strategic.  First, Curtis correctly noted that the "mug shot" reference was made with regard to Detective Schmidt's general practices rather than in reference to defendant in particular having a mug shot.  In any event, Curtis saw this reference to a mug shot as a quick "slip" by Detective Schmidt that was better to ignore, particularly when the cross-examination was going well—Detective Schmidt seemed frustrated and was playing into the defense misidentification strategy with his admission that he looked at photos before meeting people.  Second, Curtis did not think that WMET team members being "aware of" defendant was prejudicial in the context of a case in which WMET investigated defendant over a few months and three alleged drug sales.  It was, in other words, already apparent that WMET was familiar with defendant.  Moreover, Curtis emphasized that Detective Schmidt was flustered and "looked bad" during this questioning.  He was unable to answer questions adequately, and he came across "very arrogant."  In Curtis's view, on the whole, this line of questioning was detrimental to the prosecutor.  Third, similarly, Curtis did not object to Detective Schmidt's testimony that defendant was surveillance conscious because, in Curtis's view, considered as a whole, this line of questioning regarding surveillance was detrimental to the prosecutor.  Detective Schmidt was flustered, and he came across as "very egotistical" and "arrogant."  Curtis saw no reason to object.

Given Curtis's testimony, which the trial court found to be credible, we see no reason to second-guess Curtis's strategy to continue with what he viewed as an advantageous line of questioning rather than interrupting to object and to draw attention to what defendant now contends were improper comments.  See *id*.; see also *People v Barker*, 161 Mich App 296, 303-304; 409 NW2d 813 (1987).  Moreover, given the brevity and vagueness of the comments, defendant has not shown that he was prejudiced by counsel's failure to object.  See *Jackson*, 292 Mich App at 600-601.  In the alternative, defendant also argues that defense counsel should have moved for a mistrial.  However, not every improper comment warrants a mistrial, and the brief comments by Detective Schmidt did not impair defendant's ability to receive a fair trial.  *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009).  A motion for a mistrial would have been

---

[6] Although defendant now contends that defense counsel should have objected to these remarks by Detective Schmidt, defendant fails to explain what legal objections defense counsel should have made.  By failing to adequately brief the issue, defendant essentially abandoned the matter.  See *Waclawski*, 286 Mich App at 679.

meritless, and defense counsel is not ineffective for failing to make a frivolous motion.[7] *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).[8]

## IV.  CORRECTION OF CLERICAL ERRORS

Lastly, defendant contends that the trial court erred by refusing to vacate a judgment of sentence erroneously entered in lower court case 2020-004946 and by refusing to resentence defendant in case 2020-004947.  Defendant acknowledges that the trial court in fact took steps to correct the errors related to the docket numbers in case 2020-004945 and case 2020-004946, but according to defendant, the trial court erred by treating the errors as clerical.  In defendant's view, the trial court lacked authority to amend the documents because the prosecutor failed to timely request modification under MCR 6.429.[9]  Under defendant's reasoning, the order of acquittal entered in case 2020-004945 may not be corrected, but the judgment of sentence entered in case 20-004946 must be set aside.  By defendant's count that means that he has only one conviction (in case 2020-004947), and he is, therefore, entitled to resentencing in case 2020-004947 because the trial court relied on acquitted conduct when sentencing defendant as though he had two convictions.

Under MCR 6.435(A), the trial court has the authority to correct clerical mistakes at any time and on its own motion.  Contrary to defendant's arguments, the errors with the docket numbers are clearly clerical.  Defendant was charged with three identical counts: delivery of methamphetamine.  He was convicted in two of the cases and found not guilty in the third case.  At sentencing, he was properly sentenced on two counts of delivery of methamphetamine, but the trial court simply used the wrong docket number for one of the cases—substituting 2020-004946 for 2020-004945.  This kind of error in the docket numbers is nothing more than a clerical error.  See *People v Delisle*, 507 Mich 983; 959 NW2d 728 (2021) (remanding for correction of "a clerical error in the judgment of sentence, which appears to refer to an incorrect docket number"); *People v Sartin*, 33 Mich App 195, 197; 189 NW2d 755 (1971) ("[A]lthough the transcript of the sentencing proceedings included the docket number for [a case that had been dropped].  This was a clerical error and the defendant suffered no prejudice from it.").

---

[7] In the context of his ineffective-assistance argument, defendant briefly argues that counsel's alleged errors should be considered in the aggregate and that taken together, counsel's errors warrant a new trial.  However, considering his complaints about counsel's performance in the aggregate does not establish that defendant received ineffective assistance because there are no deficiencies to aggregate.  See *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990).

[8] Although defendant already had a *Ginther* hearing, he moved this Court to remand for another one.  In seeking a second *Ginther* hearing, defendant fails to provide this Court with an offer of proof showing that there are additional facts requiring development of a record to determine whether defense counsel was ineffective.  See MCR 7.211(C)(1)(a)(*ii*).  Accordingly, defendant's motion to remand for a *Ginther* hearing will be denied.

[9] MCR 6.429 governs the correction of invalid sentences.  It does not apply to the correction of the clerical errors in this case.

Accordingly, under MCR 6.435(A), the trial court possessed the authority to correct this clerical error at any time. It properly exercised that authority by correcting the docket numbers on the judgment of sentence and the order of acquittal. Defendant already received the relief to which he is entitled, and there is no further relief for this Court to provide.[10] See *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009).

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola

---

[10] To the extent that defendant contends that he is entitled to resentencing in case 2020-004947 because the trial court relied on acquitted conduct, defendant's argument is spurious. As we have discussed, the errors were simple clerical errors properly corrected by the trial court under MCR 6.435(A). Substantively, a jury convicted defendant of two counts of delivery of methamphetamine, and in considering those two counts at sentencing, the trial court in no way relied upon "acquitted conduct" within the meaning of *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).